Our next case is number 24, 1934, Crenshaw v. OPM. Okay, Mr. Graham. Good morning, your honors. May it please the court. My name is Kevin Graham. I'm an attorney in Liberty, Missouri. I represent Andrela Crenshaw, former federal employee. And Ms. Crenshaw, 11 years ago, approximately applied for disability retirement. The issue for this court today, from our perspective, is how does this court resolve a factual situation in which there is competing evidence of separation? In this case, the agency believes that separation occurred on March, or excuse me, July 27, 2013. However, two additional pieces of information following that, after that, establish that she was still an employee, potentially for up to four more years, at least. And the the issue is... But that happened after the election, right? I'm sorry, I apologize. That happened after the election, right? When you say election, I apologize, I don't know what you mean by election. Well, she left the employee of the employment of the federal government. She was on leave without pay for an All I could find in the record, which is pretty sparse, is the government continuously leaving aside the mix-up in 2015 and what they said. That she resigned as of July 27, 2013. And they say, review of our record show. Did you put on any evidence? And that's what the ALJ, everybody seemed to assume that. There's nothing in the record from your side that I could find that disputes that. Well, again, so the dispute is that... Is there a dispute over whether or not she resigned July 27, 2013? There is a dispute of whether or not her separation was effective as of that date for certain. Whether she was actually separated from the federal government. That is the core issue of the case. What evidence did you put on, except for the erroneous information that you provided in 2015? What other evidence? Everybody else seems to establish and you've got to show error in what the board found. And they assume that the review of the record shows that you resigned from federal service July 27, 2013. We don't have the attachments in the record. There's apparently a letter. Did she or did she not resign as of July 27? And what evidence did you put on to show that she did not? Again, the SF-50 that is in the record would certainly indicate that that's when her separation date was. However, the evidence also indicates that that is not when she was separated, and that there is no evidence of when she was separated. And that is because, you know, we tend to want to believe that the federal government acts in a very unitary way. That there is one document that will say you're in or out as an employee. That may be your experience, it's not mine. But can I just ask you along those same lines, you say somewhere in the record, one of your letters, that she got her Social Security disability retirement right away. She did. When was that? That would have been, again, 2014, 15, 16 range. I didn't represent her on that. Okay, but if she was getting Social Security disability in 2013, that would clearly demonstrate that she had resigned. And there's nothing in the record about the exact date on Social Security disability. I don't want to misstate that. I know very early in her process she did receive Social Security disability. Is there a resignation letter? There is not. So what record, what did you put on? You say review of the record shows that you resigned from federal service July 27, 2013. Did you dispute that? That seems not to have been litigated or contested. Before the AJ in your hearing here. It was in the sense that there are two different documents were submitted. You're saying later documentation suggests that she wasn't separated as of the 2013 date. That's correct. OPM returned her application saying you're still an employee. But if that later document was wrong, in fact she resigned in 2013, at the time she resigned in 2013, she wasn't confused about anything, right? Again, the evidence of when her separation was actually affected doesn't exist. There is an SF-50, no doubt, from 2013. When my office contacted the agency they said, no, she's still an employee. You yourself on page 6 of the blue brief say she stopped working in 2013. Which is absolutely the case. Often the case. She was on leave without pay for an extended period of time. Wait, is there a record of her being on leave without pay in 2014? Again, the evidence of this case is that... Do you have any evidence other than what OPM told you erroneously in 2015 about it appears that she's still on the rolls? Then they took it back and they said, whoops, we're wrong. We reviewed the record and she resigned as of 2013. Did you put on any evidence other than the letter that OPM said to demonstrate that she was in fact still employed as of 2015? Again, the other piece of evidence... Can you answer my question first and then you can explain it. Did you put on any evidence other than the OPM letter to demonstrate that she had not resigned as of 2013? So she received documentation up to 2017 giving her an entitlement to benefits as a federal employee. She was still receiving documents as of 2017 and that's in the appendix. Yes, that was presented to the court as well, to the ALJ as well. All right, but she was not on the rolls. She was not getting paid. She was on Social Security disability retirement. At that point in 2017, for certain, yes. I thought you had said earlier to me... I didn't represent her. I mean, if she was getting Social Security benefits on disability in 2014 or 2013, then that's a slam-dunk that she was no longer employed, right? I think you can... Social Security disability, even if you're employed? I think you can get it if you are not drawing a check. It's my belief. I don't think you can get it if you are drawing a check because they have income guidelines that would prevent you from receiving a check. If you're on leave without pay, you can get Social Security? I believe that. Social Security would say yes. Okay, so what evidence did you put on to refute what everybody in OPM and the AJ concluded was the record shows that you... review of the record shows that you resigned as of July 2013? Our evidence was two separate pieces of documents from the federal government which indicated she was still employed. And again... One was the letter from OPM that they acknowledged they admit was mistaken, correct, in 2015? 4-27-15. Okay. Correct. Well, I think Judge Dyke started with the key question, which is, at the time she got that letter, which may have been, let's assume, may have been confusing, she was already too late. So, if anything, it was harmless error. If, in fact, the record establishes that she did resign July 27, 2013, then whatever OPM told her in 2015 and then took back didn't affect her decision to apply well over a year after she resigned, right? Respectfully, I would disagree. So, again, we believe the case is about federal government at her agency in different places, different offices. One was giving information about separation and one was saying she's still on the rolls. And when was that? That was in 2015? Yes. Well, if it's true that that was the misinformation which they took back a year later or whatever, that would still have been too late. If they were correct, if they are correct and the record establishes that she filed in 20, that she resigned as of 2013, then who cares if they made a mistake in 2015 and then corrected it in 2015 or 2016. When she first filed in 2015, it would have been too late if, in fact, she had resigned in 2013, correct? Again, respectfully, I would disagree because, again, our position is this agency had the same information and different offices were coming to different conclusions about whether she was still on the rolls. And when one office says, okay, we're going to say she wasn't and we're going to go all the way back to 2013, that changes her rights dramatically. If she resigned in 2013, you lose, right? If her resignation was affected in 2013, I agree with that. Okay. Did she on extended leave without pay for the entire time? Leave without pay for two, till when? When did they? Again, we don't, I apologize. I don't understand when you said she was on extended leave without pay. Is there a paper trail on that? I mean, when you're on extended leave without, is there a paper trail? Well, the paper trail, again, is she wasn't going to work and she was receiving information from the agency that she was still employed. Getting a paycheck every year? No, no, she was not. When's the last time she got a paycheck? It would probably, it would have been likely before her July 27th of 2013, because I believe she was on leave without pay up to that point as well. Okay, so you say she was under the impression she was on leave without pay, but she filed in March of 2015. When she filed in March of 2015, she thought she had been separated, right? That's why she was filing for disability, and you say in that letter that she's been separated for at least 30 days, which would have been the requirement for you to file with OPM, right? Correct, and I'll say- Okay, right? Okay, I'm not done yet. Okay. Okay, when then did she discover, you say for at least 30 days, when you say she thought she was on leave without pay for an extended period of time, when did she discover, whoops, I'm no longer on leave without pay, so I can go and file for disability? I understand it was my office that filed, so we've represented her for 11 years now. Okay, so when did you figure out that she wasn't on leave without pay? It was my office that did that, and that would have been in early 2015. And how did you figure that out? Because with phone calls to the agency. Before then, the agency was telling us she was still employed. Wait, does the record contain phone calls? It does not, again, because this is, that's the answer to your question. All right, I appreciate that, but we can't accept that. I understand that. I guess, what does the say? Whoops, I guess I'm no longer on leave without pay. I must have been removed. I guess the record would show appendix exhibit 30, which is the letter from my office, which attempted to summarize some of the difficulties we've had with the agency, and that's in the appendix. Okay, where is that? I think it's, I think it's exhibit, I think it's appendix 30. I have appendix 30, and it's not there, so I know there were a letter, oh, there are different appendix numbers for different, okay. So what is it in that letter? I've got that letter. It is, there's a heading called confusion regarding Ms. Crenshaw's employment status, and there's a six or seven line paragraph that begins with our attempts. But there's, there's no record. I mean, there's nothing attached to this. You say this letter indicates that, this is about the erroneous OPM letter. You say the evidence comes from OPM. Let's take the OPM error, confessed error, off the table. Other than OPM's letter saying, it appears to us you may still be on the road. Did she have any other evidence to indicate? I mean, something must have precipitated her filing. If you, if you're correct. Yes. She thought she was on leave without pay for this extended period of time, and then this was all before OPM's erroneous letter. What happened? Is it in the record? It is not. Okay, so we'd have no idea why something, if she thought she had not resigned in 2013, then something, and she thought she was on leave without pay. Well, didn't, shouldn't you put something in the record to indicate that she, that she was, she had not resigned in 2013? Well, again, at the time we filed it, we didn't have the SF-50. We had no indication that she had resigned, or that there's an allegation that she had resigned in 2013, when the case was, when we filed it. Okay, when did we, the SF-50? What's that? When did you get the SF-50? Probably during the MSPB case, through the, yeah, through the MSPB. And when was that SF-50 dated? July 27th. 2013? 2013. Okay, and there's, there was no argument made that this was a fabricated letter and this wasn't effectuated? I'm sorry, I didn't hear you. There was no argument made that this was fabricated or, you know. Just that it was, it was not effected, but definitely not fabricated, no. Okay, so you've got a seven-fifth SF-50 in the record, and you're saying it was in the record, but, and she wasn't working, but she, it was not effectuated, and she was on leave without pay during that period. That is the, that's what we believe, yes. Okay, I see I'm out of time. All right, we'll give you two minutes for rebuttal. Thank you. Mr. Walker. Thank you, Your Honors. May it please the Court. This Court should affirm the decision of the Merit Assistance Protection Board because Ms. Crenshaw was correctly found not to be eligible for disciplinary retirement having untimely filed her application without the one-year period found in 5 U.S.C. 8337B. Under that same statute, an employee is only eligible for disciplinary retirement after they worked for the government for five years and filed a timely application either with OPM or their employer before they left the employee of the federal government or in one year of that period, with only one exception, that being mental disability. And I'll ask your friend, or I should have asked your friend, but they've not appealed that issue, correct? Correct, Your Honor. That is waived in their brief by Ms. Crenshaw. Because it seems that the, some of the confusion on my part here seems to be that the AJ seemed to, a lot of his opinion dealt with the issue of whether she was incompetent, which would have justified a waiver of this one-year period, right? Correct, Your Honor. So now that's not an issue of appeal. They've not, they've dropped that. Correct. Do you know anything about the Social Security disability retirement? I don't, Your Honor. I know there is some mention in the record that appears to be that she was on that at some point. Are you able to collect both? I'm sorry? Can you provide a federal retirement disability? I'm not aware of the answer to that question. My instinct would be no, but... Okay. Or not, there would probably be a waiver provision or something like that, but I'm not aware of that, Your Honor. So the issue before us is not whether she was incompetent and that resulted in her delay of the filing. Correct, Your Honor. That issue is not an appeal, but it was an issue before the board. You're correct. What she's saying is I didn't resign in 2013. I was on leave without pay for years and my disability retirement application was within one year after I was actually terminated. Something like that, right? I agree with Your Honor. I believe that is the argument today. I don't believe that is the argument in the record necessarily, though, at least before the board. Before the board, it's not clear what her status was after July 27th of 2013. We do have a reference in that initial, and as we know, errant OPM letter incorrectly saying that she was still employed, that she may have been on leave. Why isn't there... I mean, when people resign from the federal government, don't they do that by letter or by some sort of written communication now? I believe that is typical, Your Honor. It is also true that you could also just stop showing up for work and there is depending on the agency for how to address that situation. That's treated, not showing up for work is treated as a resignation? Not right away, at least for most agencies, Your Honor. It would be an absence without leave initial situation until the agency figures out what's going on in that particular employee status. And then the agency would terminate that person, right? Likely if they don't keep showing up or have a reasonable excuse for their absence from work without leave. But that's not what happened here. What the board is saying is that she resigned in 2013. Correct, Your Honor. How do we know that she resigned? Because the SF50 said it? We don't have, at least to my knowledge, we don't have an SF50 in the record. And it is a skinny record, as Your Honor says. What we do know is we have a letter from OPM in 2016 explaining that it was incorrect in its initial, it wasn't a decision at that point, it was just a letter, that it was incorrect. And it said after reviewing the record, it indicates that Ms. Crenshaw resigned on July 27, 2013. Okay, but reviewing what record? We don't know. We don't know, Your Honor, unfortunately. It is likely an SF50. Let's look at Appendix 39, the second paragraph. It's a reference to Exhibit B. It says that at the time of the filing, counsel for Ms. Crenshaw had received information that she had not been separated. What is Exhibit B? I believe, Your Honor, I don't know what Exhibit B is there precisely. My assumption is that... So that could be correct, that she had not received information that she'd been separated as of 2013? Your Honor, while that statement is there, and my friend also repeated it, I don't think that statement can be correct because we're looking at Appendix 29. This is the application for immediate disability retirement that Ms. Crenshaw filed. And looking at the, I guess, third paragraph starting with this documentation, it's being submitted directly to OPM because Ms. Crenshaw has been separated from her federal employment for more than 30 days. So as of the time of the application, March 2, 2015, Ms. Crenshaw was not confused. She knew she had resigned affirmatively or separated from federal service at least for 30 days from that letter. There was no confusion. As my friend now argues that she hasn't worked since July. That doesn't contradict the provision that I referenced you to? I mean, you... It does appear to contradict it. Ms. Crenshaw's own words here appear to contradict the other provision that she argues, which I'm not exactly sure what exhibit they're referencing. It doesn't appear to be in the appendix of the briefing. I'll ask again, then it can be the case that Ms. Crenshaw had not been separated from the agency in 2013? I'm sorry, Your Honor? It could be the case then that she had not been separated. According to the only thing in the factual record before the board, OPM's letter stated that she resigned in July 27, 2013. So whether that was a factual, I guess we're arguing, but at least OPM's records and looking at that, it's what the board rested its factual position on here. But what you're saying is that the argument she's making now that she was separated later was not made to the board, right? Correct, Your Honor. And that is, I think, the... I think Your Honor's picked up on that point. The main issue with Ms. Crenshaw's argument, she didn't conduct discovery or look into the records that the agency may or may not have had at the time. She is simply relying upon documents that would supposedly cause confusion well after the statutory deadline of one year. She did not seek additional discovery from the agency or from OPM. She didn't choose to have a hearing, an oral hearing, before the MSPB to testify about these issues or some... You don't have her briefing before the board? Not on the record here, Your Honor. But that briefing, you say, didn't dispute the 2013 separation? I'm not saying that, Your Honor. I'm simply saying that Ms. Crenshaw chose not to have an oral hearing and testify and put her testimony about when she believes she's separated. Did she argue before the board that she wasn't separated in 2013? I don't... I'm not sure exactly what her argument was. She didn't affirmatively put out a I think from the record before the board. She didn't say a different date or dispute this one other than to say she was confused because of the agency's inconsistencies with accepting that date. Well, we've got... The A.J. begins on Essay 9 that, according to OPM's record, she voluntarily resigned from her employment on or about July 27th, 2013, and it cites AF Tab 6. Do we know what AF Tab 6 is? I believe it's that OPM letter that we have been discussing, which is located at Appendix 31. And that says review of the record shows that you resigned from federal service on July 27th,  Correct, Your Honor. And is it your understanding that there's anything in the record that, in response to this letter, that says, no, I didn't resign as of July 27th, 2013? Not... Not ever disputed? Not that I'm aware of, Your Honor. It doesn't appear the A.J. considered a different argument as to that date. It appears to be accepted and there wasn't an alternative date offered. There was arguments about the after effects of the agency flip-flopping its position, but there was never a different date presented to the board, to my knowledge, that the A.J. could have accepted here. And I think that's the key point of this argument. Your friend is saying here that she was on extended leave without pay, which is unclear when she realized that she really shouldn't have been on leave without pay, which would have precipitated her filing the filing in 2015. Do you know if that argument had been made before you heard it today? Your Honor, I'm looking at their application. It doesn't mention that in 34 and 35 of the appendix to the OPM's rebuttal. What we need to know, and I guess you're not able to answer this morning, is whether she made this argument before the board that she didn't resign in 2013. If she made that argument to the board, the board had to address the question of whether she resigned in 2013 rather than assuming it based on the OPM letter. I think there's two things there, Your Honor. So we do have in the appendix of our brief, looking at appendix 40, we have the appellant's close of record submission, which contains an argument about it being timely filed. In their argument, they present the MSPB. There was no discussion of a different date or a different time that she resigned. In fact, and this is the errancy of Ms. Crenshaw's argument here, she says, looking at appendix 41, the first paragraph, last sentence, OPM has not offered any evidence to rebut Ms. Crenshaw's evidence on this issue. The issue being when she resigned, the termination date. Simply put, this is the previous sentence, the evidence establishes that Ms. Crenshaw's termination was not in July of 2013 because the agency kept her honor's roles, and likely after application to display retirement, pointing again to the insurance form that we discussed earlier, and this errant OPM letter. There's no other documentation that backs up what is essentially this counsel's argument for the MSPB, which blurs the line of the burden of proof. Because Ms. Crenshaw submitted the disability retirement application under 8 CFR 1201.56 B2, it says in an appeal from a final decision of the Office of Personal Management involving retirement benefits, if the appellant filed the application, the appellant has the burden of proving by a preponderance of evidence entitlement to the benefits. So what we have here is an affirmative OPM determination. At the top of page 41, he's arguing, simply put, this evidence establishes that Ms. Crenshaw's termination was not July of 2013. The agency kept her honor's roles well after that date, and likely after her application for disability retirement benefits. So she made the argument, and I don't see that the board addressed it. I think, Your Honor, the problem here, the only argument in here is based off of the erroneous OPM initial form that was addressed and refuted by OPM. But that's fine. I mean, if the board had said that's their only evidence that she wasn't separated in 2013, and, you know, she loses for that reason. But I don't see that the board addressed this argument, which she seems to have made at appendix 41. Well, I think the board, interesting, because this is only counsel's argument in a brief, there wasn't any documentation or support for this argument. This is all stuff outside of the record, outside of an oral hearing, where they could have accepted testimony. This is simply attorney argument in a brief without a citation to the record of where this information could be found. I mean, it's just a reference thing. Wouldn't it be nice if the board had said that? I agree, Your Honor, I agree. But ultimately, even if there is confusion... What is it that you're ultimately agreeing to? That the record doesn't support the decision here? No, Your Honor. I believe the only evidence in the record supports the July... There seems to be gaps. When do you say so? The record is very skinny here, Your Honor. But I think it's important to focus what is in the record and what Ms. Crenshaw failed to place in the record. If we go back to exhibit B that I referenced before, you said you didn't know what that was. It could be anything, right? It could be anything, but it's not attached to any of the briefing. It's not before the court today. But it was an exhibit. Shouldn't we be entitled or should we have that to review? Or maybe have it explained to us? Well, as far as the board's findings, they met factual determination as to what's in the record as far as the July 27th, 2023 date. And that date was unconverted. So that's a factual determination. And this board is only looking for critical legal errors. To that extent, the board did not commit one here having the only clear record being this July 27th, 2013 date. There is no other in the record here before about what exactly Ms. Crenshaw may have argued. Except affirmatively, when she submitted her disability application in March of 2015, she said she was separated from federal employment for at least 30 days, which demonstrates there is no confusion. And even if there was confusion- How does it do that? I mean, that's not saying I was separated in 2013. It's just saying I've been separated for at least 30 days. It doesn't date it back to 2013. It shows your honor that she was not confused. She knew when she resigned and she accepted that as of 2015. And it doesn't even matter with the decision of OPM or Richmond v. OPM. It's a one-year statutory mandatory period to apply. Thank you. Wait a minute. I'm not done. Okay, thank you. That's okay with the presiding official. You don't get to sit down until we're done. Can you look at the AJ's opinion at Appendix 13? Because I think there was a very important question raised with respect to whether the board said anything about the contention she made on Essay 40. And I'm not sure that paragraph, first full paragraph on Appendix 13 doesn't address that argument. Maybe I'm misreading it, but it seems like here the board says she's failed to demonstrate that she was mentally incompetent. That's another issue for the one year. And then say the appellant's primary argument appears to be based on the purported confusion surrounding her date of separation. In support, she argues the letter, 2015, is evidence she reasonably believed she wasn't separated. However, I find this not to be the case. So is that not responding to the argument she made on Essay 40 that she was confused and it wasn't untimely because of this OPM letter? I would say yes, Your Honor. And again, the AJ went back to the actual application that she submitted, which clearly stated that she was separated from federal employment at the time. Yeah, I mean, this does seem to specifically address the issue on 13. The appellant does not present any evidence to rebut the determination the appellant had been separated from the Department of Defense by resignation as of July 27, 2013, notwithstanding the erroneous information. So I mean, your answer earlier to me was wrong. In fact, the board did specifically address this contention and rejected it. I guess I want to clarify, Your Honor. There was no specific addressing of Exhibit B that DeDrayna brought up directly to this. But the board says, the AJ says she was separated in 2013. And this erroneous information doesn't suggest otherwise. Correct. That is the only factual date in the record. Okay. All right. Mr. Graham, you have two minutes. So why doesn't that language that Judge Prost referred to and that I just read to you is a finding of fact that she resigned in 2013? Well, clearly on 13. And if there is a finding of fact, why isn't that supported by substantial evidence? Well, because again, in the decision by the ALJ, and again, it's the language we've heard today as well, everything was, it was an erroneous letter in April of 2015. I've got to answer the question. I just read, opposing counsel, a sentence from this decision, which Judge Prost referred to earlier, saying she resigned in 2013. And that's a factual finding. And it's based on the record. Correct. Why don't you lose? Because the judge in this decision called it an erroneous letter. And again, there's a presumption there that the separation was, was the April letter was somehow just erroneous. Did the board find that she was separated in 2013? I would say yes. Right. All right. And so why, and why was it wrong about that? Because it was a presumption of, again, there was an erroneous action instead of an acknowledgement that there was obviously competing evidence. So you're relying entirely on OPM's mess up in that initial letter in 2015, saying that it appears she's in the record. I mean, assuming that's an error and assuming we can, there's a harmless error standard. If you have anything more than that, I mean, the confusion why she filed late, she didn't file, she filed before that erroneous letter from OPM. So I'm not seeing how that undercuts the position of the government that she was a year late. Again, we strongly take issue with the idea that somehow the, it was just a simple mistake that OPM fixed. What we believe the letter says, the April letter indicates that OPM clearly was told that she was still an employee. So it's all about the letter, that the letter, what they said in the letter must prove that there was stuff in the record that was unclear or something. And what about OPM versus Richmond and other cases that just established that you can make a mistake and you can't rely on the mistake. And if they're right that she did resign in 2013, she was late before she got the letter. And I would say I would distinguish Richmond because Richmond's a case about bad advice. That's all it is. It's a case about an employee or an annuitant reaching out to the agency and saying, hey, what can I earn when I'm on retirement and not lose my retirement and was told something. That's just bad advice. And they shouldn't rely on bad advice. This is a determination by OPM. It's not bad advice. It's a determination. But they corrected it. I mean, you don't think that the government has ever sent a letter that was an error saying, hey, wait a minute, we say you're still on the record. And then they look more into it. And they said, whoops, we were wrong. I mean, don't you think this happens routinely? Not routinely, perhaps. But it happens. And if you had filed based on that letter, then I think you might have something. Because if she had sent a casual letter to OPM in 2014 and they said, no, you're still on the rolls so that they really were the reason that she didn't file within the one year, then I think that might be a really hard case. But how does it affect the situation if she never filed and didn't get the erroneous letter until after her one year had expired? Because in April of 2015, she was told she was still an employee. That was a determination made by OPM. If the government is right and she resigned in 2013, then when she was told she was still an employee, that still would have been after the year had passed since she resigned, right? Is it right? But it's a determination. It's not bad advice. It's a determination by OPM. And I think that's a significant difference under Richmond. I see I'm out of time. Yeah, thank you. Thank you. The case is submitted.